

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-31-2009

# Ruiz v. Lebanon

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4244

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Ruiz v. Lebanon" (2009). *2009 Decisions.* Paper 1640.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1640

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 07-4244

———

SAMUEL RUIZ; CARMEN LYDIA FRET APONTE

v.

LEBANON COUNTY, PENNSYLVANIA, A county organized
and existing within the state of Pennsylvania;
LEBANON CITY, PENNSYLVANIA, A Municipal Corporation;
THE LEBANON CITY POLICE DEPARTMENT, A police department
organized and existing in Lebanon City Pennsylvania;
LEBANON COUNTY, PENNSYLVANIA DRUG TASK FORCE, A joint drug
task force organized and existing in Lebanon County,
Pennsylvania; LEBANON COUNTY PRISON, A prison detention
center organized and existing in the county of Lebanon,
Pennsylvania; TIMOTHY KNIGHT; TODD BREINER; RICHARD A.
RADWANSKI; BRETT HOPKINS; UNKNOWN FEMALE POLICE OFFICER;
MARTIN BARRETT

Todd Breiner; Martin Barrett,
Appellants

———

No. 08-1672

———

SAMUEL RUIZ; CARMEN LYDIA FRET APONTE

v.

LEBANON COUNTY, PENNSYLVANIA, A county organized and existing
within the state of Pennsylvania; LEBANON CITY, PENNSYLVANIA,
a Municipal Corporation; LEBANON CITY POLICE DEPARTMENT, a police
department organized and existing in Lebanon City, Pennsylvania;

1

LEBANON COUNTY, PENNSYLVANIA DRUG TASK FORCE, A joint drug task force organized and existing in Lebanon County, Pennsylvania; LEBANON COUNTY PRISON, a prison detention center organized and existing in the county of Lebanon, Pennsylvania; TIMOTHY KNIGHT; TODD BREINER; RICHARD A. RADWANSKI; BRETT HOPKINS; UNKNOWN FEMALE POLICE OFFICER; MARTIN BARRETT

Richard Radwanski,
Appellant

————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 04-cv-02359)
District Judge: Honorable Sylvia H. Rambo

————

Argued March 3, 2009

Before: SCIRICA, Chief Judge, SLOVITER, and HARDIMAN, Circuit Judges

(Filed: March 31, 2009)

————

James W. Gicking   (Argued)
Marshall, Dennehey, Warner, Coleman & Goggin
Philadelphia PA   19l03

      Attorney for Appellants Breiner and Barrett, No. 07-4244

Charles E. Wasilefski   (Argued)
Peters & Wasilefski
Harrisburg, PA   17110

      Attorney for Appellant Radwanski, No. 08-1672

Clarence E. Allen   (Argued)
York, PA 17401

      Attorney for Appellees

_____

OPINION
_____

SLOVITER, Circuit Judge.

**I.**

**Background**

Three Lebanon County police officers appeal the District Court's orders denying

their motions for summary judgment on the issue of qualified immunity. We have

jurisdiction over this interlocutory appeal. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

**A. The Drug Sales and Arrest**

As we write primarily for the benefit of the parties, we include only those facts that

are necessary for our disposition of the case. While Detective Martin Barrett was driving

in Lebanon County, Pennsylvania, on June 12, 2002, on surveillance of controlled drug

purchases, he observed a confidential informant ("CI") make a drug purchase from a man

the CI later identified as Peto. Detective Barrett saw only the back and side of the dealer,

not the face. Less than a week later, on June 18, 2002, Detective Todd Breiner observed

the same informant purchase drugs from the same individual, and on July 10 another

informant made another drug purchase, identifying the seller as Peto. Breiner did not see

the drug dealer. After these buys, Breiner conducted an investigation and learned that

"Peto was a nickname for a Samuel Ruiz who lived at 197 Lebanon Village, Lebanon,

Pennsylvania." Radwanski App. at 17a-18a.

3

On the basis of this information and the drug buys, the police officers collectively prepared three criminal complaints, one for each transaction, and the officers prepared three affidavits. Each affidavit began, "[y]our affiants are" and listed three members of the Lebanon County Detective Bureau/Lebanon County Drug Task Force, each of whom then signed the corresponding affidavit. Barrett & Breiner App. at 106a, 109a, 112a. The first affidavit was signed by Breiner and Detective Richard Radwanski, the second by Breiner, and the third by Radwanski and Barrett. Because the three affidavits are similar, we will set forth the language of only the one analyzed by the District Court, which was sworn October 11, 2002, and reads:

> Your affiants are Sergeant Brett Hopkins, Detective Todd Breiner, and Detective Sergeant Richard A. Radwanski, all members of the Lebanon County Detective Bureau/Lebanon County Drug Task Force, Lebanon County, Pa. That your affiants have extensive training and experience in the investigation of drug law violations and have been trained in the administration of drug field testing.

> On 10 Jul 02, at about 2044hrs, while in the 800 block of E. Crowell Street, Lebanon City, Lebanon County, Pa, the defendant, Samuel Ruiz, sold/delivered Cocaine, a schedule II controlled substance, and Heroin, a schedule I controlled substance, to Lebanon County Drug Task Force/Drug Enforcement Administration confidential informant #15-2001, in exchange for the sum of $40.00.

> Your affiants conducted chemical field tests on the suspected Cocaine and Heroin. These tests were positive, respectively, for Cocaine, a schedule II controlled substance, and Heroin, a schedule I controlled substance.

> That Samuel Ruiz arranged this Cocaine and Heroin delivery via the use of a residential and/or cellular telephone.

> Your affiants request a warrant of arrest be issued for the named defendant.

4

Barrett & Breiner App. at 106a.

The three affidavits were presented to a Pennsylvania state district justice, who issued a warrant for the arrest of Samuel Ruiz. The warrant listed Ruiz's address as 197 Lebanon Village, Lebanon, Pennsylvania. However, when the police went to 197 Lebanon Village, they were told that Ruiz had moved to 63 North 12th Street. When the police arrived at the house at 63 North 12th Street, Ruiz was downstairs getting a bottle for his son and the police threw him to the floor and handcuffed him.[1] He was taken to the police station, where he was eventually released when it was discovered he was not the suspect in the drug sale. In response, Ruiz and his wife filed this action pursuant to 42 U.S.C. § 1983, naming, inter alia, Radwanski, Breiner, and Barrett as defendants.

## B.     The Proceedings in the District Court

The defendants filed motions for summary judgment based on a defense of qualified immunity,[2] asserting that they had conducted a reasonable investigation. The District Court noted that the plaintiffs had responded to this motion by arguing that the police had instead "conduct[ed] a negligent investigation and recklessly provid[ed]

---

[1] Shortly thereafter, some of the officers went upstairs, and one of them searched Ruiz's wife in an intensive and highly personal manner. At oral argument we were advised that the officers involved in that search could not be identified. This issue is not before the court.

[2] Breiner and Barrett filed a joint motion. After the District Court denied their motions, Radwanski filed his motion, which the District Court denied based on the analysis it had used for the Breiner and Barrett motion.

5

incorrect information in their affidavits of probable cause." Radwanski App. at 26a n.9. The District Court declined to consider those arguments on summary judgment because the complaint did not allege negligent investigation or reckless provision of information.

Instead, the Ruiz complaint alleged a lack of probable cause for the arrest (and correspondingly the arrest warrant). In ruling on the summary judgment motions, the court thus analyzed the affidavits sworn by the officers to determine whether they supplied a basis for probable cause. Because that analysis provided a thorough textbook primer of the applicable legal principle, we quote liberally from the District Court's opinion.

At the outset, the District Court noted that "[a]n affidavit of probable cause must state facts showing [a] 'fair probability' that the proposed target of arrest engaged in criminal activity." Radwanski App. at 27a (quoting *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000). The Court continued, "[t]he contents of the affidavit should enable the magistrate to make a practical, common-sense decision whether, considering the totality of the circumstances, probable cause exists to arrest the person accused." Radwanski App. at 27a (citing *Illinois v. Gates*, 462 U.S. 213, 232, 238 (1983)).

In light of the officers' reliance on confidential informants, the District Court stated that when "police rely on a confidential informant to provide some of the information in an affidavit, the magistrate must be informed of 1) some of the underlying circumstances supporting the informant's story and 2) some of the underlying

6

circumstances leading to the affiant's conclusion that the informant may be believed." Radwanski App. at 28a (citing *Gates*, 462 U.S. at 231). Such information should include both "first-hand account[s] of illegal activity, supported by sufficient detail" and "the facts of [the officer's] own investigation that corroborate the illegal activity alleged by [the] informant." Radwanski App. at 29a (citing *Gates*, 462 U.S. at 226, 234 and *United States v. Ritter*, 416 F.3d 256, 263 (3d Cir. 2005).

Turning to the affidavits underlying the warrants in this case, the District Court found that there was an insufficient basis to establish probable cause to issue the arrest warrant. The court noted that the affidavits "set forth conclusory statements that Samuel Ruiz committed the crimes cited therein." Radwanski App. at 33a. While the affidavits claimed they were "'true and correct to the best of [each affiant's] knowledge or information and belief'[,] . . . none of the affidavits establish[ed] the *factual basis* for the affiants' knowledge or information and belief." Radwanski App. at 33a (emphasis and first alteration in original). In analyzing the affidavit quoted above, the District Court stated:

> The second and fourth paragraphs . . . are the sources of this affidavit's constitutional infirmity. They state the affiants' conclusion that Samuel Ruiz sold drugs on the date and time identified, arranging the transaction by telephone. There are no facts or circumstances that would allow the [district justice][3] to draw the inference, as required by the Fourth

---

[3] The District Court set out the law in terms of the magistrate as the impartial decisionmaker, although, in this case, the warrants were presented to, and signed by, a state district

7

Amendment - such as how the affiants came to know that the seller's name was Samuel Ruiz.

Radwanski App. at 34a. The District Court continued:

> Moreover, the affidavit states that a confidential informant purchased the drugs from Samuel Ruiz. It appears from the face of the affidavit that the informant's only involvement in this case was just that - the purchase. The affidavit fails to relate that the police relied on one or both informant's informal identification of the seller by the nickname "Peto" to begin their investigation of the seller's identity.

Radwanski App. at 35a.

The District Court then held it was error for the officers to "fail[] to relate th[e] operative fact" that part of the information had come from a confidential informant. Radwanski App. at 35a. Along with this, the officers had "also failed to set forth any factual support for the informant's credibility, reliability, veracity, or basis of knowledge. They did not provide facts that would corroborate or confirm the informal identification of the seller as 'Samuel Ruiz.'" Radwanski App. at 35a. Having concluded that the defendants' affidavits "failed, as a matter of Fourth Amendment jurisprudence, to provide a substantial basis for the [district justice] to find probable cause to arrest," the District Court proceeded to consider whether the requirements for an affidavit of probable cause were clearly established at the time the affidavits were sworn. Radwanski App. at 36a.

The Court spent little time on that issue because the right to be free of arrest

---

justice. There is no legal distinction for this purpose.

8

without probable cause was clearly established at the time defendants submitted their affidavits. The Court noted that that right was established not only in the Fourth Amendment, but also in cases decided by the Supreme Court of the United States, citing, inter alia, *Gates*, 462 U.S. at 239, and this court's decision in *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995).

Finally, the District Court looked at whether the officers had made an objectively reasonable mistake, given the facts known to the officers when they swore to the affidavits and viewing those facts in the light most favorable to the plaintiffs, as required at this stage. The District Court noted that this was not a case where the officers were "faced with making a split-second decision in the 'dangerous and complex world' of law enforcement." Radwanski App. at 37a (quoting *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004)). Indeed, the affidavits were not drafted until four months after the events. The District Court thus concluded that "it [was] well below the standards of professionalism expected of police officers to issue such conclusory affidavits as the three at bar," which had "no facts . . . that allowed the issuing [district justice] to make an independent link between the transaction for illegal drugs and someone named Samuel Ruiz." Radwanski App. at 39a.

At oral argument, this court asked counsel for the officers whether they disagreed with any statement of law or fact in the District Court's opinion. In response, counsel was unable to point to any error.

It follows that we are unable to hold that the District Court erred as a matter of law in denying qualified immunity to the officers at this stage of the proceedings. Nothing that we hold will preclude, however, the factfinder from deciding that the officers' actions were objectively reasonable based on facts shown at a later point in this matter. We will therefore affirm the District Court's orders denying the officers' motions for summary judgment.